IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| Plaintiff, | |
| v. | Case No. 21-CV-00427 |
| **REAL PROPERTY LOCATED AT 754 MARINE STREET, MOBILE, ALABAMA, and 960 DAUPHIN STREET, MOBILE, ALABAMA,** | **UNDER SEAL** |
| Defendants. | |

## VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

In accordance with Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States of America brings this Verified Complaint and alleges upon information and belief as follows:

## NATURE OF THE ACTION

1. This is a civil action *in rem* to forfeit to the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(A), (a)(1)(C), and Rule G(2), the real property, attachments thereto, and appurtenances thereon, located at: 754 MARINE STREET, MOBILE, ALABAMA, parcel number 2910380004117.XXX, more specifically described as: Lot 3, Block 6, Wilson's Second Addition, according to plat thereof recorded in Deed Book 80 N.S. Page 190 of the records in the Office of the Judge of Probate of Mobile County, Alabama, [SEC 38 T4S R1W #MP29 10 38 0 004]; and 960 DAUPHIN STREET, MOBILE, ALABAMA, parcel number 2906400009206.XXX, more specifically described as: Lot 2, Donlons Subdivision, according to plat thereof recorded in Map Book 103, Page 25 of the records in the Office of the Judge of Probate of Mobile County, Alabama,

[SEC 40 T4S R1W #MP29 06 40 0 009], (collectively, the "Defendant Properties"),[1] because the Defendant Properties were purchased with proceeds traceable to conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, wire fraud, in violation of 18 U.S.C. § 1343, false loan application, in violation of 18 U.S.C. § 1014, and were involved in money laundering transactions, in violation of 18 U.S.C. § 1957.  The Defendant Properties are thus property constituting or derived from proceeds traceable to a violation of an offense constituting "specified unlawful activity" (as defined in section 1956(c)(7) of Title 18) and property involved in money laundering offenses and are therefore subject to civil forfeiture to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

## JURISDICTION AND VENUE

2.  This Court has subject matter jurisdiction over an action commenced by the United States by virtue of 28 U.S.C. § 1345 and over an action for forfeiture by virtue of 28 U.S.C. § 1355.

3.  Venue properly lies in the Southern District of Alabama pursuant to 28 U.S.C. § 1395 because the Defendant Properties are located within the district, 28 U.S.C. § 1395(b), and pursuant to 28 U.S.C. § 1355(b) because the acts or omissions giving rise to the forfeiture occurred within this district.

4.  This Court has *in rem* jurisdiction over the Defendant Properties pursuant to 28 U.S.C. § 1355(b)(1)(B), because venue properly lies in the Southern District of Alabama pursuant to 28 U.S.C. § 1395.

5.  Pursuant to Rule G(3)(a) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, and 18 U.S.C. § 985(c)(2), a notice of this forfeiture, as well

---

[1] The Defendant Properties are further depicted in "Attachment A" below.

as a copy of the complaint will be posted on the real properties and served on the owners of the Defendant Properties. Thereafter, neither the issuance of a warrant *in rem* nor any other action will be necessary for the Court to exercise *in rem* jurisdiction over the property. 18 U.S.C. § 985(c)(3).

## THE DEFENDANTS *IN REM*

6. The Defendant Properties are the real property, attachments thereto, and appurtenances thereon, located at:

> 754 MARINE STREET, MOBILE, ALABAMA, and
> 960 DAUPHIN STREET, MOBILE, ALABAMA.

## BASIS FOR FORFEITURE

7. Pursuant to 18 U.S.C. § 1349, it is unlawful for any person to conspire to commit wire fraud, a violation of 18 U.S.C. § 1343.

8. Pursuant to 18 U.S.C. § 1343, it is unlawful to "devise[] . . . any scheme or artifice to defraud," or to "obtain[] money or property . . . by means of false or fraudulent pretenses, representations, or promises," if the person "transmits or causes to be transmitted by means of wire . . . communication in interstate or foreign commerce any writings . . . or sounds . . . for the purpose of executing such scheme or artifice."

9. Pursuant to 18 U.S.C. § 1014, it is unlawful for any person to knowingly make any false statement for the purpose of influencing in any way the action of the Small Business Administration in connection with any provision of the Small Business Investment Act of 1958, 15 U.S.C. § 631, *et. seq.*, upon any application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan, or insurance agreement or application for insurance or a guarantee, or any change or extension of the same.

10. Pursuant to 18 U.S.C. § 1957(a), it is unlawful to knowingly engage or attempt to

engage in a monetary transaction with proceeds of a specified unlawful activity in an amount greater than $10,000 by, through, or to a financial institution.

11. The Defendant Properties were purchased, funded, or acquired with proceeds of the crimes of conspiracy to commit wire fraud, wire fraud, and false statements in connection with loan applications that operated in violation of 18 U.S.C. §§ 1349, 1343, and 1014, as set forth further below. Because the Defendant Properties were purchased, funded, or acquired with proceeds of violations of these statutes, they are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), which authorizes the United States to civilly forfeit any property that constitutes or is derived from proceeds traceable to a "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7) to include violations of 18 U.S.C. § 1014 and offenses listed in 18 U.S.C. § 1961(1), which includes wire fraud in violation of 18 U.S.C. § 1343.

12. Additionally, the monetary transactions made to purchase the Defendant Properties were conducted in violation of 18 U.S.C. § 1957(a) because they were knowingly conducted with more than $10,000 in funds derived from specified unlawful activity (specifically, wire fraud and false statements in connection with loan applications), and, as such, the Defendant Properties are subject to civil forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C).

13. As required by Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, they support a reasonable belief that the government will be able to show by a preponderance of the evidence that the Defendant Properties were purchased with proceeds from wire fraud and false statements to the Small Business Administration in connection with loan applications, and that the proceeds were involved in money laundering transactions.

## FACTS

14. Specific details of the facts and circumstances supporting the forfeiture of the Defendant Properties have been provided by Federal Bureau of Investigation (FBI) Special Agent Daniel R. Sigmond, who states as follows:

    a. At all times relevant to this Complaint, Daniel R. Sigmond was and remains a Special Agent of the FBI. As a Special Agent with 16 years of experience, he has conducted or been involved in numerous investigations relating to financial fraud and money laundering.

    b. Special Agent Sigmond employs both traditional and contemporary investigative techniques, including physical surveillance, document review, witness interviews, record checks, and the seizure and analysis of electronic media and data. Special Agent Sigmond has been involved in the present investigation and has reviewed the records and information compiled in connection with submitting this Verified Complaint.

    c. The following averments do not contain all information known to investigators in this matter but are submitted to show that there is reasonable cause to believe that the United States will meet its burden of proof at trial.

    d. There is reasonable cause to believe that Jason Pears and others have violated 18 U.S.C. § 1349 (conspiracy to commit wire fraud), 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 1014 (false loan application), and 18 U.S.C. § 1957(a) (money laundering) at various times in the Southern District of Alabama and elsewhere.

    e. The United States Small Business Administration ("SBA") was created in 1953 as an independent agency of the executive branch of the federal government to aid, counsel, assist, and protect the interests of small businesses and to maintain and strengthen the overall economy of

the United States. The SBA maintained and strengthened the nation's economy by, among other activities, enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. In executing its mission, the SBA provided direct loans to small businesses and those affected by disasters.

f. On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted to provide emergency financial assistance to the millions of Americans suffering adverse economic consequences caused by the COVID-19 pandemic. The CARES Act established several new temporary programs and provided for expansion of others, including programs created and administered by the SBA.

g. The Paycheck Protection Program ("PPP") was an SBA program that provided 100% SBA-guaranteed low-interest and forgivable loans to small businesses negatively affected by the pandemic. Recipients of PPP loans were required to use the proceeds for specific purposes, including payroll costs and benefits, mortgage interest and rent payments, and utility costs. The amount of the PPP loan depended on, among other factors, the number of employees and average monthly payroll costs reported by the small business on the loan application. Applicants were required to acknowledge an understanding of the program rules and certify the accuracy of the information being submitted.

h. Although the SBA administered the PPP loan program and guaranteed the loans, private lenders processed and funded PPP loan applications using their own funds. Information regarding each loan application was sent to the SBA during processing of the loan.

i. Kabbage, Inc, was an online financial technology company owned by American Express and based in Atlanta, Georgia, that provided funding directly to small businesses through an automated lending platform. Kabbage was authorized by the SBA to process and fund

    PPP loans. A loan application submitted to Kabbage from the Southern District of Alabama would cause an interstate wire communication.

j. On June 15, 2020, Pears submitted a PPP loan application from the Southern District of Alabama in the name of The Jason Made It Company through Kabbage. Documents were signed by Pears via DocuSign. Pears registered The Jason Made It Company with the Alabama Secretary of State in January 2020. The loan application was false in material respects, including that The Jason Made It Company employed 7 people. Based on the loan application, $202,397.00 was deposited into Pear's individual Chase Bank account on June 18, 2020. A review of bank and tax records failed to reveal transactions consistent with a business employing 7 people; instead, proceeds of this loan were used for personal expenditures, including the purchase of cars, real estate, and personal property.

k. A PPP loan application in the name of Nanny for a Week, which was purportedly initialed through DocuSign by Deborah Ann Tate, Pear's mother, was submitted from the Southern District of Alabama on June 29, 2020, through Kabbage. This application contained material misrepresentations, including that Nanny for a Week had 78 employees. On July 1, 2020, based on the information submitted by Nanny for a Week, $966,570.00 was deposited into a Wells Fargo Bank account opened by Pears in February 2020, in the name of Jason Carl Pears and The Jason Made It Company. A review of the relevant bank records revealed that proceeds of this loan were used for personal expenditures, including the purchase of cars, real estate, and personal property, rather than authorized business expenditures.

l. Pears transferred funds obtained through this fraud scheme between the Chase Bank account and the Wells Fargo Bank account. Throughout the duration of the scheme

    described in this Verified Complaint, the deposits of Chase Bank and Wells Fargo Bank were insured by the Federal Deposit Insurance Corporation, and each Bank was engaged in activities that affected interstate commerce.

m. After causing proceeds of these two fraudulently obtained loans to be deposited into his Wells Fargo Bank account, Pears transferred funds from that account to purchase the Defendant Properties. On or about August 3, 2020, and February 22, 2021, Pears paid $20,000.00 and $28,618.41, respectively, toward the purchase of 754 Marine Street. Further, on or about July 22, 2020, and August 28, 2020, Pears paid $1,000.00 and $334,038.86, respectively, toward the purchase of 960 Dauphin Street. Without the proceeds of this fraud scheme, Pears' Wells Fargo Bank account would not have had sufficient funds to finance the purchase of the Defendant Properties.

## **CONCLUSION**

As required by Supplemental Rule G(2)(f), the facts set forth herein support a reasonable belief that the government will be able to meet its burden of proof at trial. Specifically, probable cause exists to believe that the Defendant Properties were purchased, funded, or acquired with proceeds which were derived from conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349, wire fraud, in violation of 18 U.S.C. § 1343, and false loan applications, in violation of 18 U.S.C. § 1014, and that the properties are involved in money laundering offenses and are therefore subject to forfeiture pursuant to 18 U.S.C. §§ 981(a)(1)(A) and (a)(1)(C).

*Signatures appear on next page*

Respectfully submitted,

SEAN P. COSTELLO
UNITED STATES ATTORNEY

Date: September 29, 2021    By:    */s/ Kasee Sparks Heisterhagen*
Kasee Sparks Heisterhagen
Assistant United States Attorney
63 S. Royal Street, Suite 600
Mobile, Alabama 36602
Telephone:   251-415-7186
Facsimile:   251-441-5044
Email:   kasee.heisterhagen@usdoj.gov


*/s/ George Martin*
George Martin
Assistant United States Attorney
63 S. Royal Street, Suite 600
Mobile, Alabama 36602
Telephone:   251-441-5845
Facsimile:   251-441-5277
Email:   george.martin@usdoj.gov

## **VERIFICATION**

I, DANIEL R. SIGMOND, hereby verify and declare under penalty of perjury that I am a Special Agent with the Federal Bureau of Investigation and, pursuant to 28 U.S.C. § 1746, that I have read the foregoing Verified Complaint for Forfeiture *in Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to my own knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States, information supplied to me by other law enforcement officers, including the Internal Revenue Service – Criminal Investigations Division and United States Small Business Administration – Office of Inspector General. The Verified Complaint does not contain each and every fact that I have learned during the course of this investigation, but only those necessary to support the civil process against the Defendant Properties and the initiation of this civil forfeiture action.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Executed this 27 day of September, 2021.

Daniel R. Sigmond
Special Agent
Federal Bureau of Investigation

## Attachment A – the Defendant Properties

### 754 MARINE STREET, MOBILE, AL



### 960 DAUPHIN ST., MOBILE, ALABAMA

